UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

SPIN MASTER, LTD.,

    Plaintiff,

- against -

E. MISHAN & SONS, INC.,                    No. 19-CV-09035 (DLC)(KHP)

    Defendant.

---------------------------------------------------------X

E. MISHAN & SONS, INC.,

    Counterclaim Plaintiff,

    -against-

SPIN MASTER, LTD.; *et al.*

    Counterclaim Defendants.

---------------------------------------------------------X

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

Kevin N. Ainsworth
Kaitlyn A. Crowe
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
Chrysler Center
666 Third Avenue
New York, New York 10017
Tel: (212) 935-3000
Fax: (212) 983-3115
kainsworth@mintz.com
kacrowe@mintz.com

Andrew D. Skale
(Admitted *Pro Hac Vice*)
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Tel: (858) 314-1500
Fax: (858) 314-1501
adskale@mintz.com

*Attorneys for Plaintiff*

EMSON glaringly omits any evidence that EMSON spent money on research or development for its product, which leaves the obvious conclusion it simply copied Spin Master.

**EMSON's Invalidity Arguments are Baseless**[1]

EMSON fails to raise a substantial question regarding validity. EMSON's challenge to Claim 23 is easily rejected, as EMSON raises only a defense of obviousness and relies on combining ***four*** different references (Lim, Kobayashi, Oda, and Chapman), two of which were examined during prosecution (Oda and Chapman). (Sadegh Decl., ¶90; PX-3.) EMSON offers no motivation to combine these four very different references, let alone evidence of such. Thus, at a minimum, Claim 23 is valid and infringed, and the Court can rule solely on Claim 23 if it chooses.

EMSON also has not shown Claims 1 and 21 are anticipated. Anticipation requires "each and every" element be present in one prior art reference. EMSON points to Kobayashi to allege anticipation of Claims 1 and 21, but Kobayashi is not a "toy vehicle."[2] It discloses a ***tool, a vacuum cleaner attachment,*** for making a "suction against a surface" for "aesthetic features, ***cleanliness***, etc., of base materials of beds, walls, ceilings, and the like." (DX2; DX3, ¶3(a)). Kobayashi does not disclose other elements including "a fan" to draw air through a duct. Kobayashi has a fluid suction blower. (Sadegh Decl. ¶¶56, 78, 79.) Thus, Kobayashi cannot anticipate Claims 1 and 21.

Also, EMSON offers no evidence of a motivation to combine the patchwork of references to achieve obviousness. A motivation to combine is a critical obviousness requirement. *See In re Nuvasive, Inc.*, 842 F.3d 1376, 1382-83 (Fed. Cir. 2016). The court may not just use hindsight to combine these different references. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421, 426 (2007). EMSON's purported expert witness, Sadegh, identifies no evidence justifying his opinion that it

---

[1] EMSON gave no notice of its invalidity arguments, proposed claim constructions (*see* Ct. Conf. 11/19/19 Tr. at 12-13), or expert testimony, despite the Court's orders. Hence, this is Spin Master's first opportunity to address them.

[2] A toy vehicle is recited in each of the Asserted Claims, for example: "when the toy vehicle is placed on the ground."

would have been obvious to combine a truck (Chapman), vacuum cleaner (Kobayashi), and toy (Lim). (Sadegh Decl. ¶¶73, 88); *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1362 (Fed. Cir. 2016) (defendant cannot rely solely on common knowledge or common sense to support its findings of motivation).[3]

EMSON further argues the '897 Patent does not have the benefit of the December 30, 2004 provisional filing date. EMSON is wrong. The provisional application supports the claims—it had a diagram showing a structurally smooth duct and it described the smooth transition, non-turbulent airflow, and the goal of reducing friction.[4] Thus, the priority date of the '897 Patent is not an issue.

**Infringement, Claim Construction, and Claim Differentiation**

EMSON does not dispute that its products infringe Claims 1, 21, and 23 as construed in Spin Master's motion. EMSON instead argues for improper constructions, which are unsupportable. The Court can easily find that EMSON infringes.

EMSON's construction of "duct," "fan," "structurally smooth," and "entry portion," ignores the doctrine of claim differentiation, which "is at its strongest in this type of case, where the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim." *InterDigital Communs., LLC v. ITC*, 690 F.3d 1318, 1324 (Fed. Cir. 2012). Here, Claim 20 depends from Claim 1 and adds only one element: "wherein the duct is a venturi duct." Accordingly, the "duct" in Claim 1 (and Claims 21 and 23) is something more than a "venturi duct." *See id.* at 1324-25 (stating "the presumption is 'especially strong'" where "'the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one

---

[3] EMSON does not address any of the required secondary indicia of non-obviousness—such as commercial success—which weigh against a finding of obviousness. *See Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

[4] DX51, 5 ("Accordingly, air is drawn in at the ends 12b, which are provided with a broad radius to ensure ***smooth*** and insofar as possible ***non-turbulent airflow***; for similar reasons, the undersurface 12c of the chassis 12 is smooth."); *see also id.,* 9-10, 12; *id.*, 2 ("The obvious problems to be overcome are ***friction*** between the sealing member and the wall, which impedes motion of the device); *see id.,* Provisional Figs. 1-13 (became Figs. 1-4; 8-16 of '897 Patent).

2

party is urging that the limitation in the dependent claim should be read into the independent claim.'"); *Phillips*, 415 F.3d at 1314 ("[T]he claim in this case refers to 'steel baffles,' which strongly implies that the term 'baffles' does not inherently mean objects made of steel.").

For the same reason, there is no requirement in either Claim 1 or 23 for a "free flow" of air. Only Claim 21 recites that the fan is to receive "free flowing air." Moreover, Spin Master did not disavow a partial vacuum with regard to a "duct." The language that EMSON relies on for its "disavowal" argument arose in connection with prosecution of claims of the '755 Patent, each of which expressly recites a "venturi duct," not simply a "duct."[5] While the '755 Patent's venturi duct may require a free flow of air, the "duct" in the claims of the '897 Patent is not so limited.

EMSON's proposed construction of "entry portion" to require a "radiused" entry is an improper attempt to limit the claim to a preferred embodiment. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1311 (Fed. Cir. 2005) (en banc reversal of non-infringement; "district court erred by limiting the term to corresponding structures disclosed in the specification and their equivalents.").[6] There is no requirement for a radiused entry portion; to the contrary **Figs. 8-9 show a right angled entry portion**. Claim construction cannot be inconsistent with the specification. *See, e.g., BTG Intl' Ltd.* v. *Amneal Pharm.*, 923 F.3d 1063, 1071 (Fed. Cir. 2019) (the definition of a key claim term "must encompass the full range of...effects disclosed in the specification").

Turning to EMSON's construction of "structurally smooth" and "flat" being glass-like throughout the entire duct (and not just a portion), that is inconsistent with Claim 18, which states:

> 18. The toy vehicle of claim 1, wherein:

---

[5] "When multiple patents are in the patent family, the prosecution history regarding a claim limitation only applies to a subsequent claim with the same limitation." *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999). Since "duct" and "venturi duct" are not the same, arguments made regarding "venturi duct" do not limit "duct."

[6] *Phillips* also stated "although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments." *Phillips*, 415 F.3d at 1323. EMSON improperly reads an embodiment into the claim in support of the construction of "duct" to assert that the "duct occupies the entirety of the cross-sectional area formed by the undersurface of the chassis and a wall surface." (Opp.,10.)

> a connection between the entry portion and the flat transition portion is structurally smooth;
> a connection between the flat transition portion and the exit portion is structurally smooth; and
> a connection between exit portion and the fan duct is structurally smooth.

If EMSON's construction of "structurally smooth" applied to the "entire duct" were accurate, Claim 18 would be meaningless. The entire duct does not have to be flat or structurally smooth.[7]

Claim differentiation also prevents EMSON's construction of "structurally smooth", as Claim 10 recites: "wherein a pair of bumps on the undersurface …" The specification also allows for "slight bumps" on the chassis. (PX-3, 12:10-11.) Even EMSON's dictionary says "smooth" is just "***generally*** flat or unruffled." (Opp., 16, n.5.) There is no question each of EMSON's chassis are generally flat. Thus, under both Spin Master and EMSON's constructions, EMSON infringes.

**EMSON's Infringing Importation and Sales Are Irreparably Harming Spin Master[8]**

Spin Master has suffered irreparable harm despite having almost met its August 2019 projections.  First, in April 2019 (prior to significant infringement activity), Spin Master actually projected sales of over $7.6M for the latter half of 2019, and would expect annual sales of $9-10M without infringers on the market. (Keller Decl., ¶¶18-21.) Those numbers have not been met. Second, Spin Master has also offered evidence of, *inter alia,* ongoing price erosion, loss of market share, and detriment to the future pipeline of Zero Gravity® products, none of which can be remedied with money damages.[9]

To show a "sufficiently strong causal nexus" between EMSON's infringement and Spin

---

[7] There is no genuine dispute that the duct in the EMSON products is structurally smooth.  It has to be or else it would not function.

[8] Spin Master also did not delay. It filed this motion two months after discovering EMSON's toy. *Elite Licensing v. Thomas Plastics*, 250 F. Supp. 2d 372, 390 (S.D.N.Y. 2003) (six months not undue; preliminary injunction granted); *Polymer Techs v. Bridwell*, 103 F.3d 970, 976 (Fed. Cir. 1996) (four months not delay; vacating injunction denial).

[9] (*Id*., ¶¶22-27; Pl. Br., 18-20, Pl. Findings, ¶¶109-117.) Similarly, Spin Master's percentage of sales from Zero Gravity® products does not undermine the irreparable harm, which cannot be remedied with money damages.

Master's harm, Spin Master need only "'show that the infringing feature drives consumer demand for the accused product.'" *See Apple v. Samsung*, 735 F.3d 1352, 1360, 1364 (Fed. Cir. 2013) (vacating denial of preliminary injunction). Spin Master's vehicles have a unique feature that drives consumer demand—driving on walls and ceilings. EMSON copied—and heavily promotes—this key feature.[10] The "fact that other infringers may [exist] does not negate irreparable harm." *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1151 (Fed. Cir. 2011); Pl. Br., 19, n.9.

EMSON also argues that at some unidentified point, it purportedly stopped selling the 2707FEB(1) model.[11] As the Federal Circuit has held, "[t]hat the defendant has stopped infringing is generally not a reason for denying an injunction against future infringement unless the evidence is very persuasive that further infringement will not take place." *W.L. Gore v. Garlock, Inc.*, 842 F.2d 1275, 1281-82 (Fed. Cir. 1988); *Rosco, Inc. v. Mirror Lite Co.*, 2006 U.S. Dist. LEXIS 73366 at *10 (E.D.N.Y. 2006). No such evidence was offered, and EMSON's other models infringe.

**The Balance of Hardships Weighs in Spin Master's Favor**

First, EMSON's argument that it would be "financially harmed" by an injunction (Opp., 38) is not true; EMSON has been in business for 70 years, sells an array of products, and just began shipping Radical Racers in July 2019. (Mishan Decl., ¶¶5-14, 34). Second, EMSON continued to infringe ***after*** it was put on notice of its infringement.[12] Any harm to EMSON by its knowing infringement does not weigh against an injunction. (*See* Pl.'s Findings, ¶¶118-120.)

---

[10] *Quad/Tech, Inc.* v. *Q.I. Press Controls B.V.*, 701 F. Sup. 2d 644 (E.D. Pa. 2010) does not address direct competition, and, indeed, the patent was not even being used at the time the injunction was sought. Similarly, the district court's holding in *Travel Tags* (Opp., 5) is not persuasive, as it also does not address the issue of direct competition.

[11] ████████████████████████████████████████████████████████████████████ EMSON also sells a single car (in two colors) online, and advertises in general only one type of car.

[12] *See, e.g.*, PX-32 ████████████████████████████████████████████████████

5

DATED: November 27, 2019                    Respectfully submitted,

                                                    MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

*/s/Kevin N. Ainsworth*
Kevin N. Ainsworth
Kaitlyn A. Crowe
Chrysler Center
666 Third Ave.
New York, NY 10017
Tel:  (212) 935-3000
Fax: (212) 983-3115
kainsworth@mintz.com
kacrowe@mintz.com

Andrew D. Skale (Admitted *Pro Hac Vice*)
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Tel:  (858) 314-1500
Fax: (858) 314-1501
adskale@mintz.com

*Attorneys for Plaintiff*
SPIN MASTER, LTD.

**CERTIFICATE OF ELECTRONIC SERVICE**

I hereby certify that on November 27, 2019, Plaintiff's counsel emailed the foregoing document, which contains Attorneys Eyes Only information, to the following counsel of record for Defendant:

John Zaccaria
Notaro, Michalos & Zaccaria P.C.
100 Dutch Hill Road
Suite 240
Orangeburg, NY 10962
Email: jzaccaria@notaromichalos.com

Alan Federbush
Notaro, Michalos & Zaccaria P.C.
100 Dutch Hill Road
Suite 240
Orangeburg, NY 10962
Email: alan.federbush@notaromichalos.com

Brian Joseph Doyle
Notaro, Michalos & Zaccaria P.C.
100 Dutch Hill Road
Suite 240
Orangeburg, NY 10962
Email: brian.doyle@notaromichalos.com

>*/s/Kevin N. Ainsworth*
>Kevin N. Ainsworth